## UNITED STATES ex rel. ROONEY v. RAGEN, Warden.

### No. 9110.

Circuit Court of Appeals, Seventh Circuit.

Nov. 20, 1946.

Rehearing Denied Jan. 4, 1947.

Albert E. Jenner, Jr., of Chicago, Ill., and John H. Rooney, of Joliet, Ill., for appellant.

George F. Barrett, Atty. Gen., and William C. Wines, Asst. Atty. Gen., for appellee.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This appeal is from an order of the District Court, entered March 8, 1946, dismissing appellant's petition for a writ of habeas corpus. The court certified probable cause for an appeal. Appellant, John H. Rooney (referred to as petitioner), Henry P. Berry, and Rosalie Rizzo, were jointly tried and convicted of the crime of murder in the Superior Court of Cook County, Illinois. As a result, Rooney and Berry were sentenced to the penitentiary for life and Rizzo for a term of twenty years. This conviction was affirmed by the Supreme Court of Illinois, wherein a detailed statement of the facts may be found. People v. Rooney, 355 Ill. 613, 190 N.E. 85. Rooney has since been confined in the Illinois State Penitentiary at Joliet, Illinois.

The petition filed May 26, 1944, insofar as the record discloses, was prepared by Rooney without the aid of counsel. He was permitted to file it in forma pauperis.

On June 13, 1944, a rule was entered directing the appellee (respondent) to show cause why the writ should not issue. On July 7, 1944, a motion to dismiss the petition and to deny the issuance of the writ was filed by respondent. The petition and the motion to dismiss were the only pleadings filed in the cause. Thus it becomes material to examine the allegations of the petition for the purpose of ascertaining whether a cause of action was stated of which a federal court could take cognizance.

The petitioner in substance alleges that on June 13, 1933 (ten days after the murder), he was placed under arrest by Chicago officers at Eagle River, Wisconsin, without a warrant or process of extradition, was handcuffed, placed in the back seat of an automobile and forced to accompany them into Illinois. At that time no criminal charge had been placed against him and he "was not even a fugitive from justice." While at Eagle River, Wisconsin, so it is alleged, the police officers from Chicago, after raiding the premises of petitioner without a warrant and arresting him, searched the said premises, a cottage, without a warrant and illegally seized a pair of field glasses which were the personal property of petitioner. He alleges that the field glasses obtained by illegal search and seizure were used against him at his trial, even though the court had suppressed the evidence because of such illegal seizure.

It is also alleged that a search was made of the premises of Rizzo (a co-defendant) without a warrant and without her consent, and certain seized property was introduced in evidence at the trial although its suppression had been ordered by the court because of its illegal seizure. The petition quotes from the opinion of the Supreme Court (355 Ill. 613, 624, 190 N.E. 85, 89) as follows:

"The introduction of this copy of the receipt was not only contrary to the statement of the State's attorney that it would not be used, but the original having been obtained by an unlawful search and seizure the People were not entitled to have a copy in evidence. * * * It was error to admit this exhibit in evidence. * * * While this court condemns the conduct of the State's attorney in that behalf and such conduct would in a close case work a reversal of the judgment, yet in this case the exhibit tended only to show the relationship between Rizzo and Rooney, and its admission did not amount to prejudicial error."

Petitioner alleges that his conviction could not have been obtained without the testimony of one Alex Davidson. At this point we digress to observe that a reading of the opinion of the Supreme Court affirming Rooney's conviction lends support to this statement. Furthermore, respondent in his brief filed in this court states:

"It appears that the conviction rested at least in part (and perhaps entirely) upon the testimony of a man named Alex Davison or Alex Davidson (both spellings appear in the record), whose testimony at the trial implicated petitioner. It further appears that Davidson was an accomplice in the killing and that he has received consideration in the form of leniency and employment on public payrolls for his testimony against petitioner."

As to this witness, the petition alleges:

"Petitioner has no desire to pass judgment on this State witness. Instead he wishes to offer as part of this petition, marked Exhibit 'C', a sworn affidavit made by the said Alex Davidson on the 17th day of December A. D. 1936, in which this witness confesses that he is a perjurer, that he lied at petitioner's trial, and that he testified for the State so that he would not be prosecuted for the crime and because the State's Attorney promised him employment. He states specifically:

" 'This affiant further states that his testimony in the said case in which he testified that Henry Berry, alias Hogan Berry, said, "You ought to see the way we let him have it," meaning John Rooney, was not and is not true.'

"There seems to be no doubt that the Assistant State's Attorneys who prosecuted the case were aware that their principal witness was an untruthful individual and highly incompetent. Nevertheless, they used this confessed perjurer, and neither they nor the trial Judge would permit Defense Counsel Stewart to establish that this witness had a police record."

Following this allegation petitioner cites and quotes from certain cases to the effect that a prisoner is entitled to discharge upon a writ of habeas corpus where it is made to appear that officials connected with the trial in a state court knowingly procured false testimony or knowingly perpetrated a fraud upon the court or the defendant, and where such conviction has been obtained upon perjured testimony, whether by the active conduct or the connivance of the prosecution. The petition, in connection with a subsequent amendment thereto, states in considerable detail the efforts made by petitioner to secure his release by proceedings in various courts. Inasmuch as one of the important questions of the case is whether petitioner had exhausted his state court remedies, we shall subsequently discuss this phase of the case.

The petition alleges that petitioner "was deprived of due process, and that he has been restrained of his liberty and is being restrained of his liberty contrary to the provisions of the Illinois Statutes, the Illinois Constitution, the 4th and 5th Amendments of the Bill of Rights, and Article 4 and the 14th Amendment of the United States Constitution."

Certain exhibits are attached to and made a part of the petition, including extracts from the evidence introduced at the trial. There is also attached a copy of an affidavit subscribed and sworn to by Alex Davidson which appears to have been filed in a proceeding before the Illinois Board of Pardons and Paroles in re Henry Berry. While this affidavit is primarily concerned with the affiant's testimony as to Berry, it has a direct bearing in the case against Rooney. The facts related in the opinion of the Illinois Supreme Court make it plain that the conviction of both Rooney and Berry was obtained in a large measure upon the testimony of Davidson. Respondent in his brief makes no contention that Davidson's affidavit is not equally applicable to Rooney, but bases his argument on the premise that Davidson's false testimony was not given with the knowledge of the State's Attorney. The brief states:

"It will be noted that although it does indeed appear from this affidavit that Davidson changed his story to the police, first refusing to implicate and later implicating petitioner, it does *not* appear that the State's Attorney's office knew which of Davidson's two stories was true or that Davidson's testimony at the trial was suborned by the State's Attorney's office or any other public officials."

Davidson in his affidavit stated, in addition to what we have heretofore quoted from the petition:

"* * * that from the time of his second arrest and during the time and before and also the time during the trial of the said defendants in this matter, he was maintained by the State's Attorney of Cook County, in the Palmer House, a hotel located in the City of Chicago, County of Cook, and State of Illinois, and also in the Clayton Hotel, another hotel in the City of Chicago, County of Cook, and State of Illinois, and that all food, cigars, cigarettes and entertainment, such as being taken by Officers of the State's Attorney's Office, of the County of Cook, and State of Illinois, to baseball games, theatres and other places of amusement, and expenses were paid by the State's Attorney's Office of the County of Cook, and State of Illinois. That the State's Attorney's Office of the County of Cook and State of Illinois, did obtain employment for this affiant in the Street Department of the City of Chicago and State of Illinois."

There is also attached to the petition an exhibit which discloses that Davidson at the trial was asked, "Have you been indicted in this case?" and that he answered, "Never. Nobody talked to me about the possibility of my being indicted. Nobody ever suggested that I might be. It occurred to me that I might be. When it occurred to me I did not talk to anybody about it in these interviews. I never asked the State's Attorney what he might do with me. Nothing like that had come up in the conversations. *I do not know what will happen to me, I have no idea.* I am getting some money—$12; $10 a week my wife gets and $2.00 a week I get for cigarettes and so forth. In addition to that my keep is being paid for over there at the Palmer House, by the State's Attorney. I eat well,

I order anything that strikes my fancy on the Palmer House menus; anything I like, regardless of the price of it."

It is also shown by an exhibit that Davidson shortly after this trial was employed by the city as a laborer and that he was carried on the payroll as such for a good portion of the time during the latter part of 1933 and for some five or six years subsequent thereto.

Respondent's motion to dismiss was predicated in the main upon two propositions: (1) That petitioner does not show a violation of a federal right, that is, that he was not deprived of due process under the 14th Amendment, and (2) that he has failed to show an exhaustion of State Court remedies. It is also asserted that petitioner presents no rare case with exceptional circumstances which would justify interference of the United States District Court.

Obviously, respondent's motion to dismiss raised no issue of fact but presented only questions of law. The matters thus before the court did not call for a hearing on the merits; in fact, such a hearing would not have been in order until a determination of the legal questions presented. Petitioner, together with counsel appointed by the court and an attorney for respondent, participated in what the record indicates was a hearing on the motion to dismiss. The court dismissed the petition without stating its reasons therefor, although the colloquy between court and counsel indicates that the dismissal was because of the insufficiency of Davidson's affidavit. In fact, the sufficiency of this affidavit appears to have been the principal matter discussed and considered.

■ We shall first consider whether the petition alleges the violation of a federal right, and in doing so it must be assumed on the motion to dismiss that petitioner's allegations are true. House v. Mayo, 324 U. S. 42, 45, 65 S.Ct. 517, 89 L.Ed. 739. It must also be kept in mind that the petition was drawn by petitioner without the aid of counsel. In a similar situation the court in Tomkins v. Missouri, 323 U.S. 485, 487, 65 S.Ct. 370, 372, 89 L.Ed. 407, stated:

"But where the substance of the claim is clear, we should not insist upon more refined allegations than paupers, ignorant of their right of counsel and incapable of making their defense, could be expected to supply."

■ There can be no doubt but that the petition specifically alleges that petitioner was illegally seized in Wisconsin and brought to Illinois without extradition or writ of any kind. Neither can it be doubted that his premises in Wisconsin were illegally searched, as well as those of his co-defendants in Chicago, and that evidence illegally seized was either introduced in evidence or referred to by the State after it had been suppressed by the trial court. As already noted, such conduct on the part of the State was condemned by the Illinois Supreme Court. It is contended by respondent, and numerous authorities are cited in support thereof, that none of these activities on the part of the State constitute a violation of a federal right. No issue is taken with this contention as a general proposition although it is argued, and we think with merit, that such activities may be considered in connection with petitioner's asserted denial of due process. Cf. Betts v. Brady, 316 U.S. 455, 462, 62 S.Ct. 1252, 86 L.Ed. 1595.

The alleged perjured testimony of Davidson, upon which petitioner and his co-defendants were convicted, forms the principal basis for the contention that petitioner was deprived of due process of law. In Hysler v. Florida, 315 U.S. 411, 413, 316 U.S. 642, 62 S.Ct. 688, 690, 86 L.Ed. 932, the court stated:

"If a state, whether by the active conduct or the connivance of the prosecution, obtains a conviction through the use of perjured testimony, it violates civilized standards for the trial of guilt or innocence and thereby deprives an accused of liberty without due process of law."

There is no doubt, in fact it is conceded, that petitioner was convicted largely upon the testimony of Davidson. The petition plainly alleges that his testimony was perjured and that petitioner was convicted as a result thereof. The only point really open to argument is whether the State's

Attorney's office was charged with knowledge of such perjury. It is true the petition does not expressly so aver. The petition does allege, however, that this testimony was given "so that he [Davidson] would not be prosecuted for the crime and because the State's Attorney promised him employment. * * * There seems to be no doubt that the Assistant State's Attorneys who prosecuted the case were aware that their principal witness was an untruthful individual and highly incompetent. Nevertheless, they used this confessed perjurer * * *." These allegations of the petition must also be considered in connection with Davidson's affidavit, which is attached to and made a part of the petition. In addition to what we have heretofore quoted from the affidavit, it discloses that Davidson first denied any knowledge of the crime. The affidavit further states: "I was told that if I testified for the State that I would not be prosecuted in this case and that I would be taken care of by the State's Attorney's [sic] of Cook County, and that I would be given employment." It was in response to this alleged promise that he agreed to give the incriminating testimony. Also, as already shown, he was given employment with the City, which it is stated was at the request of the State's Attorney's office.

■ The petition, of course, would have been in more perfect form if it had directly alleged knowledge, but we are of the view that these allegations taken together, and when liberally construed in favor of the petitioner as they must be, substantially allege knowledge or, in the words of the Supreme Court in the Hysler case, supra, "active conduct or the connivance" on the part of the prosecution.

■ It must be borne in mind that what we have said has to do only with the sufficiency of the petition to entitle the petitioner to a hearing, providing the court otherwise has jurisdiction. As already indicated, we think too much importance has been attached to Davidson's affidavit. The fact is it is of no consequence except as it is made a part of the petition and furnishes support thereto. Evidence in the form of affidavits is improper at any stage of the proceeding in a matter of the instant

character. In Walker v. Johnston, 312 U. S. 275, 284, 285, 61 S.Ct. 574, 85 L.Ed. 830, the court so holds. The court discusses the practices of different Circuits and states at page 285 of 312 U.S., at page 579 of 61 S.Ct., 85 L.Ed. 830:

"In other circuits, if an issue of fact is presented, the practice appears to have been to issue the writ, have the petitioner produced, and hold a hearing at which evidence is received. This is, we think, the only admissible procedure. Nothing less will satisfy the command of the statute that the judge shall proceed 'to determine the facts of the case, by hearing the testimony and arguments.'"

The court further states at page 286 of 312 U.S., at page 579 of 61 S.Ct., 85 L.Ed. 830:

"On a hearing he would have the burden of sustaining his allegations by a preponderance of evidence. It is true that they are denied in the affidavits filed with the return to the rule, but the denials only serve to make the issues which must be resolved by evidence taken in the usual way. They can have no other office. The witnesses who made them must be subjected to examination ore tenus or by deposition as are all other witnesses. Not by the pleadings and the affidavits, but by the whole of the testimony, must it be determined whether the petitioner has carried his burden of proof and shown his right to a discharge. The Government's contention that his allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence."

■ Thus we are of the view that the petition raised a federal question. On the question thus raised, petitioner was entitled to a hearing providing he had exhausted his state court remedies, which we think he had, as will be subsequently shown. Respondent, of course, was entitled in an appropriate pleading to take issue with the allegations of the petition. The burden would then have been upon the petitioner to substantiate, not merely by affidavits but by competent evidence, his charge that the State's Attorney's office had knowledge of Davidson's perjury. This could be done by direct evidence or by the

proof of facts and circumstances sufficient to satisfy the trier of the facts of its verity.

Respondent contends that petitioner failed to exhaust his state court remedies because (1) he failed to seek certiorari from the Supreme Court of the United States to review the affirmance of his conviction by the Supreme Court of Illinois, and (2) he failed to invoke the Illinois statutory substitute for the common law writ of error coram nobis. Inasmuch as respondent relies solely upon these two grounds, there is no occasion to relate in detail petitioner's efforts in other respects. It is sufficient to note that he filed a petition for habeas corpus in the Circuit Court of Will County, Illinois (county of incarceration) which was denied, a petition for habeas corpus in the Supreme Court of Illinois which was denied, and a petition for certiorari from the United States Supreme Court to the Illinois Supreme Court which was denied. Rooney v. Ragen, 324 U.S. 851, 65 S.Ct. 688, 89 L.Ed. 1411. He also petitioned the Criminal Court of Cook County (court of trial and conviction) for a writ of habeas corpus, which was denied, and petitioned the United States Supreme Court for certiorari to the Criminal Court of Cook County, which was denied December 10, 1945, 66 S.Ct. 263.

Petitioner asserts as his reason for not applying to the United States Supreme Court for certiorari from the affirmance of his conviction by the Illinois Supreme Court the fact that he had no attorney and that he was prevented from filing such application pro se because of a rule then in effect at the penitentiary by which persons incarcerated therein were denied the right of access to the courts except by counsel hired to represent them. See White v. Ragen, 324 U.S. 760, 762 footnote, 65 S.Ct. 978, 89 L.Ed. 1348, and U. S. ex rel. Foley v. Ragen, 7 Cir., 143 F.2d 774, 777. This situation is conceded by respondent and in our judgment furnishes ample excuse for petitioner's failure to petition the Supreme Court for certiorari. We, therefore, are of the view that respondent is in no position to urge petitioner's failure in this respect when such failure was occasioned by its own illegal and improper ruling.

Petitioner's failure to invoke the Illinois statutory substitute for the common law writ of error coram nobis, as provided by Sec. 72 of the Illinois Practice Act, Ill.Rev. Stat.1945, Chap. 110, Par. 196, raises a more serious question. By the express terms of that provision the remedy when available must be sought "within five years after the rendition of final judgment in the case." It further provides that when a person is "an infant, non compos mentis or under duress, at the time of passing judgment, the time of such disability shall be excluded from the computation of said five years."

Judgment was rendered against petitioner August 12, 1933, his conviction was affirmed by the Supreme Court, 355 Ill. 613, 190 N.E. 85, February 23, 1934, and a rehearing denied April 10, 1934. His petition in the instant matter was filed May 26, 1944, long subsequent to the expiration of five years after the rendition of judgment in the case. In Mooney v. Holohan, 294 U.S. 103, 115, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406, the court pointed out that the state court remedies coming within the rule are those which "still remain open," which, as we understand, refers to the time relief is sought in a federal court. See also Ex Parte Hawk, 321 U.S. 114, 118, 64 S.Ct. 448, 88 L.Ed. 572.

It appears plain from a reading of this statutory provision that if it ever afforded petitioner a remedy, which we doubt, it no longer did so after the expiration of the limitation period. Some doubt, however, has been cast upon this interpretation of the statute by the Supreme Court in Van Woods v. Neirstheimer, decided May 20, 1946, 66 S.Ct. 996, 999. In fact, respondent contends that the decision in that case is conclusive against the petitioner in the instant case. Such contention is based upon the following statement:

"But we do not know whether the state courts will construe the statute so as to deprive petitioner of his right to challenge a judgment rendered in violation of Constitutional guarantees where his action is brought more than five years after rendition of the judgment. Nor can we at this time pass upon the suggestion that the Illinois statute so construed would itself vio-

late due process of law in that a denial of that remedy, together with a denial of the writ of habeas corpus, would, taken together, amount to a complete deprivation of a state remedy where Constitutional rights have been denied. We would reach that question only after a denial of the statutory substitute for the writ of error coram nobis based on the statute of limitations had been affirmed by the Supreme Court of the state."

Notwithstanding this statement, the fact is that the Illinois Supreme Court in People v. Rave, 392 Ill. 435, 443, 65 N.E.2d 23, 27, held:

"A further reason why plaintiff in error was not entitled to a hearing on his petition for a writ of error coram nobis is that said proceeding was not brought by the defendant within the period of five years after the rendition of final judgment in the case, as provided by section 72 of the Civil Practice Act. Plaintiff in error was last convicted on December 3, 1934, and his conviction was affirmed by this court on June 17, 1936, and rehearing denied on October 7, 1936. The petition for a writ of error coram nobis was not filed in the criminal court until November 10, 1944."

The Illinois court in the Rave case also expressly held that confinement in a penitentiary was not duress so as to toll the statutory five year period of limitation. The court said at page 444 of 392 Ill., at page 27 of 65 N.E.2d:

"The serving of the sentence by the defendant subsequent to the passing of the judgment would not stop the running of the statute provided the defendant was not under duress at the time of the passing of the judgment."

The opinion in the Rave case antedates the opinion in the Van Woods case by some four months. It is, therefore, difficult to comprehend the statement of the court in the Van Woods case upon any basis other than that the law of Illinois, as decided by the Supreme Court in the Rave case, was not called to its attention. Furthermore, the Illinois Appellate Court in People v. Austin, 329 Ill.App. 276, 67 N.E.2d 883 (Abst. opinion), decided subsequent to the Van Woods decision, not only follows the decision of the Illinois Supreme Court in the Rave case but holds that duress did not toll the statutory period of limitation in face of an allegation that "their efforts to file a writ of error coram nobis were stopped because their petitions were never permitted to pass the prison gates, until abrogation of such practice." It is also worthy of note that the motion in the Austin case was predicated upon the premise that the defendants had been convicted upon perjured testimony and there was submitted in connection with the motion an affidavit of recantation by the witness who had given such testimony.

Thus the law of Illinois is definitely settled that the remedy is unavailable after the expiration of the five year limitation period unless there was duress at the time of passing judgment; furthermore, that confinement in prison is not duress within the meaning of the statute. Thus this Illinois remedy was no longer available to petitioner, and any effort on his part to invoke such remedy would have been merely an idle and useless gesture. Certainly the Supreme Court in the Van Woods case did not intend to imply nor is this court required to hold that petitioner was required to engage in such futility.

We are, therefore, of the view that petitioner has sufficiently shown an exhaustion of state court remedies so as to give a federal court jurisdiction and that he is entitled to a hearing on the merits.

In concluding, we think reference may appropriately be made to the fact that Mr. Albert E. Jenner, Jr. was appointed to represent petitioner on this appeal and that he was assisted in the preparation of petitioner's brief by Mr. Roger W. Barrett, both members of the Chicago Bar. They have submitted an unusually helpful brief, with a thorough analysis of applicable court decisions. In addition, Mr. Jenner ably presented petitioner's cause in oral argument. The court is grateful for the services thus rendered.

The order appealed from is reversed and the cause remanded, with directions to proceed in accordance with the views herein expressed.