## UNITED STATES v. KOCH et al.

### No. 349.

Circuit Court of Appeals, Second Circuit.

Aug. 12, 1940.

Sanford H. Cohen, of New York City (George Cohen, of New York City, of counsel), for appellant.

John T. Cahill, U. S. Atty., of New York City (Peter Donoghue and David L. Marks, Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The appellant was tried and convicted in the District Court for the Southern District of New York on an indictment in one count charging him with having conspired with four named persons and with others unknown to violate sections 2553 and 2554 of Title 26 U.S.C.A. Int.Rev.Code, and sections 173 and 174 of Title 21 U.S.C.A., which form parts of the statutes relating to narcotic drugs.

It was alleged that the conspirators wilfully and unlawfully agreed to sell narcotic drugs not in, or from, the original stamped package as required by 26 U.S.C.A. Int.Rev.Code, § 2553; that they would likewise sell such drugs without the use of written order forms as required by 26 U.S.C.A. Int.Rev.Code § 2554; and that they would likewise conceal, sell and facilitate the transportation, concealment and sale of such drugs contrary to sections 173 and 174 of 21 U.S.C.A. while knowing that

they had been imported into the United States contrary to law; and that the acts committed in this jurisdiction in furtherance of the conspiracy were a conversation between the appellant and one of the conspirators known as Mauro in March, 1937, and another conversation between appellant Mauro and one Al Kobach about a week later.

There was evidence ample to enable the jury to find that one of the alleged conspirators, Celli, obtained 171 ounces of cocaine and 12 pounds of opium in Montreal, Canada, in December, 1936; that he telephoned to Mauro in New York about it and afterwards unlawfully took it to Boston, Mass., with the connivance of Bovell, a porter on the train, and thence brought it to New York where he delivered at least some of it to Mauro in Brooklyn.

The only evidence which connected the appellant with this conspiracy was that about two months after Mauro received the cocaine from Celli he met Mauro on the street in New York City and, after inquiring if he had some cocaine he wanted to sell and being informed that he had 170 ounces, agreed to buy it for $25 an ounce. The agreement of sale provided for the delivery of the cocaine at Mauro's house in Brooklyn the following morning to Al Kobach who would be sent for it by the appellant; and for payment within two or three days. The appellant sent Kobach for the cocaine as agreed and Mauro delivered it to him in six cans. A few days after that Mauro met the appellant and Kobach. Appellant then told Mauro that he was having trouble because the cocaine "did not show good" and requested Mauro to take some of it back. Mauro agreed provided what was returned was the same that he had delivered to Kobach and they were to meet again in two days. Several days later they did meet and the appellant then paid Mauro the agreed price for seventy ounces which he apparently had sold and at the same sime returned seventy-five ounces. It was shown that two of the cans of opium so returned were sold by Mauro and that one was returned by Mauro to Celli who delivered it to a man named Ruppolo who in turn sold it to a government agent. The government analysis of the contents of that can left no doubt as to its being a narcotic drug.

█ One of the many issues raised by the appellant on this appeal is whether or not the evidence was sufficient to prove

that he knowingly joined the conspiracy to import and dispose of the narcotics. It has been strenuously argued that the utmost reach of the proof made him out to be only an isolated purchaser from the conspirators and not proved guilty of the crime charged in the indictment even though the purchase was unlawful. It is apparent that there is real difficulty in this respect. The amount of the cocaine purchased would, of course, indicate that it was taken not for personal consumption alone but for resale. But the appellant was not a steady purchaser from the conspirators and so it cannot be inferred as it was in United States v. De Vasto, 2 Cir., 52 F.2d 26, 78 A.L.R. 36, that he knew of the conspiracy and was acting to further its ends rather than exclusively his own. Nor does the situation shown in evidence here correspond essentially to that in United States v. Bruno, 2 Cir., 105 F.2d 921, where the appellants knew they were helping carry forward one or more phases of a conspiracy. Here, for aught that appears, the appellant had no knowledge whatever as to how Mauro had obtained the cocaine. No doubt he knew that Mauro's possession of it was unlawful and that was true also of the sale to and purchase by him. But there was nothing in the evidence to warrant a finding that he knew that Mauro was not, or had not previously been, acting alone in getting possession of the drug or how he may have obtained it.

The purchase of the cocaine from Mauro was not enough to prove a conspiracy in which Mauro and the appellant participated. They had no agreement to advance any joint interest. The appellant bought at a stated price and was under no obligation to Mauro except to pay him that price. The purchase alone was insufficient to prove the appellant a conspirator with Mauro and those who were his co-conspirators. Dickerson v. United States, 8 Cir., 18 F.2d 887. It was necessary to the government's case to show that the appellant was in some way knowingly associated in the unlawful common enterprise to import the drugs and dispose of them unlawfully. United States v. Peoni, 2 Cir., 100 F.2d 401; Muyres v. United States, 9 Cir., 89 F.2d 784.

█ The appellant requested the court to charge, and duly took exceptions to the refusal so to do, that there was no proof that he knew that the drugs had been imported into the United States from Canada or that he was connected with the conspiracy to

import drugs into the United States from Canada in violation of Sections 173 and 174, Title 21 of the United States Code Annotated. It was error to decline to comply since that left in the case as submitted generally to the jury the issue of a conspiracy to commit an offense not proved together with issues as to what we may now assume, without deciding, was an established conspiracy between appellant and Kobach to sell narcotic drugs in violation of Secs. 2553 and 2554 of 26 U.S.C.A. Int.Rev.Code. As the appellant protected his rights by properly calling the matter to the court's attention and preserving exceptions, he is entitled to a reversal. United States v. Smith, 2 Cir., 112 F.2d 83; United States v. Mascuch, 2 Cir., 111 F.2d 602.

Judgment reversed, and cause remanded.