## UNITED STATES v. SIMONDS.

### No. 212.

Circuit Court of Appeals, Second Circuit.

March 13, 1945.

Albert Lyons, of Brooklyn, N. Y., for appellant.

John F. X. McGohey, U. S. Atty., of New York City; (Nicholas P. Iannuzzi and Joseph Brandwen, Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before CHASE, HUTCHESON, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The appellant was found guilty by a jury in the District Court for the Southern District of New York after trial on an indictment in one count charging that he conspired with Steven Homa and Edward J. Moran to violate 50 U.S.C.A.Appendix § 633 and Ration Order 5-C relating to gasoline ration coupons. Violation of the latter is made a misdemeanor by the terms of § 2(a) (5) of the Act of June 28, 1940, 50 U.S.C.A.Appendix § 1152(a) (5), as reenacted in § 301 of the Second War Powers Act, 1942, 56 Stat. 179, 50 U.S.C.A. Appendix § 633. Simonds and Homa were indicted but Moran was not. On Homa's plea of guilty, he was fined and an imprisonment sentence was also imposed but that was suspended and he was placed on probation. The appellant was sentenced to imprisonment for one year and fined one thousand dollars.

The appellant took the stand in his own behalf and denied any unlawful dealings whatsoever with the subject matter of Ration Order 5-C, but from the testimony of Homa and Moran and other witnesses the jury could have found the following facts.

The appellant was an insurance broker living in Yonkers, N. Y., where the conspiracy is alleged to have taken place. Homa was the operator of a gasoline service station and Moran was the manager of a grocery market. About March 15, 1944, Simonds approached Moran, with whom he was acquainted, and asked if he knew of anyone desiring to purchase some gasoline coupons, to which Moran replied that he would see and would let Simonds know. Moran then talked to Homa about it and later reported to Simonds that Homa wanted a large quantity of coupons and would pay for them at the rate of $2\frac{3}{4}$ cents per gallon of gasoline obtainable under the government rationing system upon surrender of coupons. Simonds stated that he was unwilling to do business with Homa but said he would turn the coupons over to Moran, who should deliver them to Homa and collect the agreed price and then remit the money to Simonds. This was agreed to and the arrangement was carried out to the extent of many thousands of ration coupons which the appellant delivered to Moran for sale to Homa and for which Homa paid $1800, that Moran turned over to the appellant. Moran received from the appellant for his assistance in selling the gasoline coupons to Homa about 10,000 ration stamps good for the purchase of food. Simonds and Homa may not at first

have been acquainted with each other, but they saw each other on one occasion after Simonds had brought Moran a batch of coupons at the store where the latter was employed. It was raining that day and Simonds drove Moran to Homa's gasoline station, where Moran got out of the car and delivered the coupons. Homa approached the car and Moran identified Simonds to him as the man from whom he had been obtaining them.

The gasoline coupons which Homa bought were pasted on cards known as O.P.A. Forms R-120, which under the rationing system are furnished to gasoline station operators and on which they affix the ration coupons received by them from individual purchasers of gasoline. To obtain new supplies of gasoline, the station operators surrender to their distributors these forms with the coupons pasted on them and the distributors thereafter deposit them in designated banks. The bank concerned in this case followed a practice of checking the forms so deposited, placing them in a vault, and periodically burning the accumulation. The appellant's wife, who was employed as a teller in this bank and had charge of such deposits, was the last person through whose hands these forms passed before they were to be destroyed. During March and April of 1944, while the conspiracy was in existence, the bank was short a large quantity of gasoline coupons which its records indicated had been deposited. A number of the O.P.A. forms which were seized from Homa and were introduced in evidence by the government at the trial bore traces of markings which showed that they had previously been deposited in the bank.

■ The appellant contends that the facts as just outlined show such a cooperation between him and the other two men in the commission of the substantive offense that under the rule of United States v. Zeuli, 2 Cir., 137 F.2d 845, they may not be convicted of conspiracy to commit that misdemeanor. But in United States v. Loew, 2 Cir., 145 F.2d 332, this court pointed out that the principle of the Zeuli case is limited to situations where the substantive crime cannot be committed by a single individual. Here it is obvious that a single individual could be guilty of the offense of violating the statute and the regulations promulgated thereunder by unlawfully possessing the gasoline coupons without the cooperation of anyone else. Moreover, the activities of Moran induced by the agreement between him and the appellant were not necessary to the commission of the substantive offense of transferring and assigning them. Even if two persons were necessary to a transfer or assignment of the coupons, a middleman was not inevitably required. Moran's participation was merely incidental to the conspiracy which included it because that happened to be the chosen method. The conspiracy was, therefore, a separate crime. Compare, United States v. Katz, 271 U.S. 354, 46 S. Ct. 513, 70 L.Ed. 986; Chadwick v. United States, 6 Cir., 141 F. 225.

If, as the appellant has argued, there were two distinct sales of the coupons in each instance—from Simonds to Moran and then from Moran to Homa—those sales were not independent transactions; what Simonds received depended upon what price was paid to Moran, and therefore the two sales, if such there had been, would have been so interrelated by the agreement of these men as to be but consecutive steps in the consummation of the conspiracy charged in the indictment. Nor is it material that Simonds and Homa had no dealings directly with each other; it is enough that each was aware of the part which the other was to play in the transaction. United States v. Bruno, 2 Cir., 105 F.2d 921; United States v. Brandenburgh, 2 Cir., 146 F.2d 878.

Furthermore, the jury had ample evidence from which to find that before any of the coupons were sold to Homa he had agreed to take at the specified price whatever coupons Moran would bring to him, and that the appellant knew this and acted in delivering the coupons to Moran in accordance with his offer to supply Moran with coupons which the latter would sell for the benefit of the appellant, who received the entire proceeds of the sale. The appellant is clearly mistaken in his belief that United States v. Peoni, 2 Cir., 100 F.2d 401, and United States v. Koch, 2 Cir., 113 F.2d 982, are applicable. Consequently the appellant's requests to charge based on legal principles which controlled decision in those cases were properly denied, and similarly we find no error in the denial of his other specific requests to charge. In so far as their subject matter was pertinent to the issues the general charge covered it adequately.

■ Finally, the appellant insists that it was reversible error to refuse to permit his attorney to inspect a statement in question-and-answer form which the witness Moran had made to the assistant district attorney who tried the case. The witness did not use the statement to refresh his recollection when testifying, but appellant's attorney wanted it for use in cross-examination. The district attorney handed the statement to the court, saying "If there is any discrepancy he can have it." The judge read the statement and then denied the motion for permission to examine it. It was marked for identification as Exhibit C and has been made available to us on this appeal. We find nothing in it which makes erroneous the denial of the motion to inspect it. Compare, United States v. Krulewitch, 2 Cir., 145 F.2d 76, and United States v. Cohen, 2 Cir., 145 F.2d 82.

Affirmed.