## UNITED STATES v. DI RE.
### No. 160, Docket No. 20455.

Circuit Court of Appeals, Second Circuit.
Feb. 3, 1947.

CLARK, Circuit Judge, dissenting.

Charles J. McDonough, and McDonough & Boasberg, all of Buffalo, N. Y., for appellant.

Michael J. McMorrow, Asst. U. S. Atty., and George L. Grobe, both of Buffalo, N. Y., for appellee.

Before L. HAND, SWAN and CLARK, Circuit Judges.

**L. HAND, Circuit Judge.**

DiRe appeals from a judgment convicting him of knowingly having in his possession counterfeit gasoline ration coupons.[1] The only question necessary to discuss upon this appeal is whether the documents upon which his conviction was based, were obtained in violation of the Fourth Amendment. The facts, which are substantially undisputed, were as follows. One, Reed, informed O'Donnell, an "investigator" of the Office of Price Administration, that a man, named Buttitta, was selling counterfeit gasoline coupons, and that he would sell them to Reed on the afternoon of April 14, 1944. O'Donnell and another "investigator, named Neff, called to their assistance Gross, a police detective of Buffalo, and the three in a car followed a car in which were Buttitta, Reed and DiRe, until it was parked at the curb on Arkansas Street, Buffalo. The three officials then left their car, went to Buttitta's car, and found him in the driver's seat, DiRe beside him,

---

[1] § 301, Second War Powers Act of 1942, 50 U.S.C.A.Appendix, § 633.

and Reed in the rear seat. Reed had two gasoline coupons in his hand which, upon inquiry, he said Buttitta had given him and which proved to be counterfeits. Gross arrested Buttitta, Reed and DiRe and took Buttitta and Reed with him to a police station in his car; Neff took DiRe. At the police station DiRe was searched, and concealed upon his person were found two counterfeit gasoline coupons, each for 100 gallons. If the arrest of DiRe was lawful, the search of his person was lawful, and the conviction must be affirmed; if the arrest was not lawful, the search was unlawful, and the conviction cannot stand.

As we have said, the arrest was on April 14, 1944, the indictment was found and filed on June 23d, and the case came on for trial on August 8; meanwhile DiRe had not moved to prevent the seized coupons from being used as evidence upon his trial. However, when the prosecution offered them in evidence, his attorney objected to their admission on the ground that the search had been unlawful; and the court excused the jury, while the question was discussed upon the merits. The prosecutor did not suggest that the application had come too late; he defended the legality of the arrest because Gross "had reason to believe all persons in that car were involved in that crime either as accomplices or otherwise." He asked: "Did the officer act unreasonably under the circumstances when the circumstances were such as to lead a reasonable man to believe that a crime was being committed?" The court overruled DiRe's objection and received the coupons in evidence, but he did not state his reasons for doing so.

■■■■ We shall assume, arguendo, that Gross had authority under § 177 of the New York Code of Criminal Procedure to arrest Buttitta and Reed, although the crime was not against the State of New York.[2] We shall similarly assume that the federal law determines whether the crime was a felony within the meaning of § 177, and that because a conspiracy is a felony under federal law, Gross's authority was measured by § 177(2) and gave him power to arrest Buttitta and Reed. By a parity of reasoning his authority to arrest DiRe must rest upon subdivision three of § 177, that is, Gross must have had reasonable ground for thinking that DiRe was a party to the conspiracy of Buttitta and Reed, which was in process of execution before his eyes. However, unless the last was true, DiRe's arrest was unlawful, because although he was in fact guilty of another crime—possessing other counterfeit gasoline coupons—neither Gross, O'Donnell nor Neff had any cause to think so. The question may therefore be stated barely but entirely adequately, as follows: when an officer has been informed that two persons are to deal in counterfeit documents while they are riding in a motor car, has he reasonable ground for believing that a third person who is riding in a car along with them is a party to that transaction? We have several times had occasion to consider what relation to a conspiracy makes a man a confederate, and what relation to the principals in a crime makes a man an abettor; and we have uniformly held that the prosecution must prove the accused to have associated himself with the principals in the sense that he has a stake in the success of the venture.[3] When the Supreme Court affirmed us in United States v. Falcone,[4] it held that the sale of material to those who the seller knows will use it to commit a crime, does not make the seller a party to a conspiracy of the buyers. We do not understand that the decision turned upon the fact that the seller might not have been aware that there were several buyers acting in concert; and, so far as we can see, our doctrine is a corollary of the decision, although the opinion did not expressly go so far. The discussion in United States v. Harrison[5] must probably be taken as against our view, though the decision itself may not be.

[2] Marsh v. United States, 2 Cir., 29 F. 2d 172.

[3] United States v. Peoni, 2 Cir., 100 F. 2d 401; United States v. Bruno, 2 Cir., 105 F.2d 921 (reversed upon another point, Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257); United States v. Falcone, 2 Cir., 109 F.2d 579; United States v. Koch, 2 Cir., 113 F.2d 982; United States v. Zeuli, 2 Cir., 137 F.2d 845; United States v. Simonds, 2 Cir., 148 F.2d 177. See also Morei v. United States, 6 Cir., 127 F.2d 827, 831.

[4] 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128.

[5] 3 Cir., 121 F.2d 930.

The legality of DiRe's arrest therefore depends upon whether his presence in the car when the other two were engaged in selling counterfeit coupons, was presumptive evidence that the sale was a transaction in which he had a personal interest. It was not enough that Buttitta and Reed felt confident that he would not betray them; the law. does not make one a participant in crimes which one does not denounce. It is true that failure to denounce a felony is itself a crime; but that is by separate enactment,[6] which would have been unnecessary, if knowledge followed by inaction alone made one an abettor. Even if DiRe had known that Buttitta and Reed were dealing in counterfeit ration coupons, there was not the slightest reason to suppose that he was himself either a seller or a buyer; or that he had any interest whatever in their enterprise. Indeed, even though Gross had known that DiRe was in possession of similar coupons, it would have been no reason to suppose that he was interested in the coupons being traded in. Nobody would assert that all the spectators of a crime may be arrested as participants; and even though riding in a car with two such offenders be evidence of acquaintance, or possibly friendship, with them, it would be altogether unwarranted to carry the inference further than complaisance. So far as we can see, the arrest was utterly indefensible; a mere scooping up of all those present on the chance that any associate of the principals was probably engaged in any dealings between them, or, if not, in other transactions of the same kind; and this in spite of the fact that Reed on whose information Gross acted, had not mentioned DiRe as Buttitta's confederate. If the prosecution of crime is to be conducted with so little regard for that protection which centuries of English law have given to the individual, we are indeed at the dawn of a new era; and much that we have deemed vital to our liberties, is a delusion.

The prosecution has not upon this appeal attempted to support the competency of the coupons on the ground that DiRe did not apply for their suppression before the cause came on for trial. It has done well not to do so, because it abandoned any such objection when it undertook, as has appeared in the passages we have quoted, to defend the search upon the merits. Both sides having presented the point to him in this way, we should have no warrant for supposing that the judge did not decide it; but without so indicating had refused to pass on the point because DiRe had delayed too long in asserting it. We may assume, arguendo, that, if he had chosen that for his ground, and had for that reason refused to consider the merits, he would have been within his powers,[7] but he was not obliged to do so; he was free to pass by the delay and to give DiRe the benefit of the objection, if in his judgment, that would not unduly interfere with the trial. "The rule is one of practice; and is not without exceptions."[8] The last sentence of Rule 41(e),[9] is in this regard merely a restatement of the law as it was.[10] It would be a parody on justice now to hold that, although the judge was wrong in the decision which he did make, nevertheless, since he might have refused to make it at all, DiRe may not complain of the error.

Judgment reversed.

CLARK, Circuit Judge (dissenting).

The ground of my dissent may be shortly stated. It is that police officers cannot be held unreasonable in declining to view as a mere bystander one who accompanies a criminal to a crime rendezvous.[1] Surely

---

6 § 251, Title 18 U.S.C.A.

7 United States v. Salli, 2 Cir., 115 F.2d 292.

8 Cogen v. United States, 278 U.S. 221, 223, 49 S.Ct. 118, 73 L.Ed. 275; Gouled v. United States, 255 U.S. 298, 312, 313, 41 S.Ct. 261, 65 L.Ed. 647.

9 Rules of Criminal Procedure, 18 U.S.C.A. following section 687.

10 Notes of the Committee, p. 32.

1 The opinion is in error, and misplaces the emphasis, in concluding that the officers "followed a car in which were Buttitta, Reed and DiRe, until it was parked" at a certain place. Actually Reed had informed them of "his appointment to meet Buttitta at the Deco stand," and the incident happened at the appointed time and place. The testimony of the officers shows that, while they had recognized the car earlier at a street stop light, they did not see the actual occupants until they again came upon it while it was already parked at the curb at the Deco stand.

rarely, if at all, will innocence be accorded such opportunity; the instigators of the meeting may seek helpers, but hardly onlookers, i.e., potential talebearers. This reaction of common sense is here supported by the other circumstances, notably the absence of any natural outcry, protest, or denunciation of his associates by DiRe on his apprehension. Less significant, but quite consistent, is the fact that DiRe was clad in ordinary work clothes. That a felony was involved is conceded. In truth there was not only the felony of conspiracy, Blumenthal v. United States, 9 Cir., 158 F. 2d 883, but also the substantive felony of possessing and passing the counterfeit coupons. United States v. Serpico, 2 Cir., 148 F.2d 95.

The issue raised concerns only the lawfulness of the arrest, for, that being established, the search follows as an incident thereto. See authorities cited by Frankfurter, J., in Davis v. United States, 66 S.Ct. 1256, 1269. Now the general and traditional rule of arrest without a warrant by a peace officer is aptly stated in the N.Y. Code of Criminal Procedure, § 177, as applicable in three situations: "1. For a crime, committed or attempted in his presence; 2. When the person arrested has committed a felony, although not in his presence; 3. When a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have committed it." Since the Serpico case shows the later finding of the counterfeit coupons upon DiRe to be a felony, it might well be contended that the second subdivision is applicable. See Wilgus, Arrest without a Warrant, 22 Mich.L.Rev. 541, 685; Holley v. Mix, 3 Wend., N.Y., 350, 20 Am.Dec. 702; 18 U.S. C.A. § 53a, last clause.

But accepting the third subdivision of the statute as stating the more accepted federal principle, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; United States v. Lindenfeld, 2 Cir., 142 F.2d 829, 831, certiorari denied 323 U. S. 761, 65 S.Ct. 89, 89 L.Ed. 609; 5 U.S. C.A. § 300a, there would seem to be "reasonable cause" for the officers to believe that DiRe had participated in the crime admittedly being committed by Buttitta and Reed. (Actually, as later events showed, he was quite clearly a source of supply, a reserve bank, so to speak, for Buttitta in the latter's sales.) The cases have always held that it is not certainty, but only a reasonable deduction from the circumstances and positions of the parties, which justifies the arrest. See cases collected in the commentaries to the A.L.I. Code of Criminal Procedure, 1931, § 21, pp. 233, 234; Miller, Arrest without a Warrant by a Peace Officer in New York, 21 N.Y.U.L.Q.Rev. 61. How far this decision departs from traditional concepts is shown, for example, by such a leading case as Burns v. Erben, 40 N.Y. 463, 470, where the arrest of a visitor to a house where silver had been stolen from the basement was justified because she was the only nonmember of the family to be in the house at the time. And Woodruff, J., after analyzing the early precedents to justify the result, says that while innocent parties "may sometimes be subjected to inconvenience and mortification," yet "any more lax rules would be greatly dangerous to the peace of the community and make the escape of criminals frequent and easy," and quotes Lord Mansfield that a different rule would be "a terrible thing." See also Perkins, The Law of Arrest, 25 Iowa L.Rev. 201, 233; Beckwith v. Philby, 6 Barn. & C. 635, 108 Eng.Rep. 585; Samuel v. Payne, 1 Doug. 359, 99 Eng.Rep. 230; United States v. Strickland, D.C.W.D.S.C., 62 F.Supp. 468 (involving gasoline ration coupons in an automobile); and our own weaker case of United States v. Heitner, 2 Cir., 149 F.2d 105, 106, certiorari denied Cryne v. United States, 326 U.S. 727, 66 S.Ct. 33, where we said that "the 'reasonable cause' necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties."

Of course, the test here is the normal and appropriate reactions of police officers, not the more sophisticated after-rationalizations of a judge in his chambers. True, a judge, particularly an intermediate judge, cannot be insensitive to a present strong trend toward special care and consideration in criminal prosecutions, perhaps even more so where the guilt of the accused is clear. This is surely understandable in the case of

many important crimes as a reasonable, even if quixotic, demonstration to a world calloused to brutality of the beneficent contrast afforded by the American spirit of fair play. But it has less desirable consequences in the enforcement of regulatory legislation, where our undisciplined individualism makes even so desirable a war measure as the conservation of gasoline resented and thwarted all too often. Here so gigantic was the task of enforcement, so few the number of federal enforcing authorities, that a breakdown of the law must inevitably have occurred unless the co-operation of local police officers was assured. Any one who has worked at law enforcement—particularly in smaller communities, where cause and effect are more quickly and surely traced—knows how a lack of support from the agencies higher up is accepted as a legitimate excuse for weariness or laxity of the officers on the street. That does not excuse illegality. It does suggest that a decision which must operate as a limiting direction to the police should carry conviction of its own accommodation to the realities of everyday life and the practical thinking of ordinary persons, lest it discourage honest effort at necessary policing. I venture to believe that, given a few restrictive and ununderstood decisions of this nature, the local police would be led to leave the federal men to their own more polite means of and attempts at law enforcement.

I may add that I am troubled, too, at the disposition made of the procedural point presented by the absence of timely motion for the suppression of the exhibits here. Perhaps it should always be overlooked, but certainly much has been made of it in our own and other cases. Thus, see United States v. Salli, 2 Cir., 115 F.2d 292, followed in Rose v. United States, 9 Cir., 149 F. 2d 755; 8 Wigmore on Evidence, 3d ed. 1940, § 2184, p. 31. If ever applicable, it would seem so here, where the defense was known and available to defendant from the beginning and its use might at once have stopped all proceedings, including, of course, the much later jury trial. I had supposed it well settled that when a trial judge made a decision without stating his rationalizations, that decision was to be affirmed on any legal ground which existed. Here, after a brief colloquy from counsel, the judge merely said: "I will receive them." Had Rule 41(e), Fed.Rules Cr. Proc., been then in effect, I think we must surely have affirmed, for that makes the motion before trial the normal thing, unless the judge rules otherwise.