**UNITED STATES v. PAGLIA.**

No. 172, Docket 21898.

United States Court of Appeals
Second Circuit.

Argued June 14, 1951.

Decided July 19, 1951.

446

Roswell B. Perkins, New York City, for appellant.

Harold J. Raby, New York City, Irving H. Saypol, U. S. Atty., New York City, (Bruno Schachner, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and L. HAND, Circuit Judges.

L. HAND, Circuit Judge.

Paglia appeals from an order made under § 2255 of the Judiciary Code [1] which denied him all relief under the following circumstances. He had been indicted with others on March 10, 1950, in the Southern District of New York for transporting in interstate commerce counterfeit American Express Company cheques. The indictment contained ten counts but only three—Nos. 5, 6 and 10—involved Paglia. Of these, Count Five charged him with transporting the cheques from New York to Cleveland; Count Six, with transporting them back from Cleveland to New York; and Count Ten was the inevitable count for conspiracy. Paglia was arrested on May 2nd and has been kept in custody ever since; on May 15th he retained an attorney on whose advice he pleaded "Not Guilty" on May 22nd. On June 9th he withdrew that plea and pleaded "Guilty" to Counts Five and Ten; this also upon the advice of his lawyer. After several trips from the House of Detention to the Court House, finally on July 19th he was brought for sentence before a judge who sentenced him to fifteen years imprisonment; ten on Count Five, and five on Count Ten—the maximum in each case. The prosecuting attorney gave as one reason for asking these maximums that he would withdraw Count Six—that for transporting the cheques back to New York from Cleveland. (Incidentally no nolle prosequi had been filed on this count when the motion came on to be heard.)

On August 7, 1950, Paglia moved under § 2255 of the Judicial Code [1] and Rule 32(d) of the Criminal Rules [2] to set aside the plea and sentence on the grounds: (1) that at his arraignment before the Commissioner he had not been advised of his right to counsel; (2) that the prosecutor had threatened and intimidated him several times in the absence of his counsel in an attempt to make him plead guilty; (3) that the same prosecutor had promised that he would recommend a sentence of not more than five years if he would plead guilty; (4) that "other Government agents," not identified, had given him the same assurance; and (5) that later he was called before a grand jury where he gave self-criminatory evidence. The prosecutor filed an affidavit, denying all these assertions and upon the record so made the judge denied the motion. It was from that order that this appeal was taken; we find it necessary to consider only points two, three and four.

1. § 2255, Title 28 U.S.C.

2. Rule 32(d) Federal Rules of Criminal Procedure, 18 U.S.C.A.

■■ There are a number of decisions which hold, when the prosecution has coerced the accused by threats, or persuaded him by deceit, to enter a plea of guilty, especially when he has no counsel, that he may withdraw his plea and plead "Not Guilty." [3] It is true that we have not found any which hold that the accused may have that relief when he has been represented by counsel, and when the prosecution has done no more than fail to perform a promise to recommend a sentence lower than in fact it asked. However, that has again and again been one of the grounds on which relief was granted, and we will assume for argument that even though it stood alone, it might be enough; that point is not presented by this record. Upon such an assumption, if in the case at bar the prosecutor did promise to recommend to the judge sentence of a fixed term, and by means of it induced the plea of guilty, and if upon that plea the judge at the prosecutor's recommendation imposed a substantially higher term, it would follow that Paglia might withdraw his plea, for we all know that, although a judge is not bound to accept recommendations, he is extremely likely to be influenced by them. This we may assume because we hold for reasons that will at once appear that such a rule becomes inapplicable if the accused does not claim to be innocent, but on the contrary admits all facts on which his guilt depends.

■ The statute attaches a condition to the remedy, without which it would indeed be open to the greatest abuse. The judge must examine the "files and records of the case," and they must "conclusively show that the prisoner is entitled to no relief"; otherwise he is absolutely entitled to a "hearing." If he succeeds at the "hearing" the judge "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Thus the judge has a discretion, even though he is satisfied that some kind of "hearing" is necessary, to accommodate its extent to the relief to be given; although the "files and records" may conclusively show that the accused is not entitled to a trial, they may not show that he is not entitled to a resentence. That was the situation in the case at bar. The judge who imposed the original sentence on July 19th, held a hearing before sentence, though after the plea of guilty had been entered, at which the attorney whom the accused had retained answered the prosecutor's statement of facts; and in which he went over in detail Paglia's connection with the transactions, and conceded that he had been the "passer" for a ring of counterfeiters, and had taken the cheques in question from New York to Cleveland and cashed them there. He did not so much as intimate that all the facts were not as the prosecutor had stated them; indeed he repeated them in language which left no loophole for Paglia's innocence. All he did was to plead for lenity on the ground of Paglia's war record, and—rather absurdly—of his "youth."

■ So it appears that the crime charged in Counts Five and Ten was conceded; that Paglia was then present in court; that he heard all that his attorney said about him, which the attorney could only have got from him; and that he said not a word in contradiction. Furthermore his affidavit on this very motion contains not a syllable of contradiction. Thus, he has twice admitted all the facts constituting the crime and he still does not repudiate his admissions. A person indicted for crime may of course insist that only a jury shall decide his guilt; but he must at least deny that he is guilty; he must tender an issue. In the case at bar whether or not Paglia has any ground for relief as to his sentence, surely he has none for withdrawing his plea. He is not entitled to gamble upon the outcome of a trial in which he could succeed only by repudiating what he has twice conceded and does not now disavow. Justice is not a game; there is no constitutional

3. Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 71 L.Ed. 1009; Walker v. Johnston, 312 U.S. 275, 61 S. Ct. 574, 85 L.Ed. 830. Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859; Ziebart v. United States, 5 Cir., 185 F.2d 124.

right to "throw dust in a juryman's eyes, or hoodwink a judge who is not overwise." So far then as the motion was to set aside the plea of guilty and permit a plea of not guilty to be substituted, it is contrary to principle, and, as it happens, is also contrary to the only precedents that we have found.[4]

On the other hand so far as it sought a "hearing" as to whether the sentence imposed should be set aside, and a new sentence be substituted, it should have prevailed. Paglia was entitled to a "hearing" without a jury under § 2255 upon two issues: (1) whether the plea was induced by reliance upon the prosecutor's promise not to ask for a sentence of more than five years; and (2) whether it was induced by the prosecution's promise to dismiss Count Six. The "hearing" must be in open court; Paglia must be present and free to testify and he must be represented by counsel. If he succeeds upon either his sentence must be revoked and he must be resentenced, although we do not wish even to intimate how the trial judge ought to decide these issues. One thing indeed we do wish to say. How far the promises or representations of "other Government officials" than the prosecutor may be considered in deciding whether Paglia was induced to plead we cannot say in advance. If he chose to rely upon representations of those who had no power to commit the prosecutor, he took the same chances that anyone does who does not ascertain whether his promisor has the power to speak for another.

Finally, as to the promise to withdraw Count Six as constituting no legal consideration for inducing the plea of guilty, we hold that that will depend upon by what evidence the prosecution meant to prove it. We understand that its case against Paglia was that when he cashed the cheques in Cleveland, he knew that the banks which paid him would in due course send back the cheques to New York in order to receive credit for the money they had paid; and that he therefore set in motion and so "caused" the return of the cheques from Cleveland back to New York, which was a separate and distinct crime. Now it is quite true that, when he cashed the cheques Paglia knew, or at least he had every reason to suppose, that the result would be their return to New York, and that knowledge would suffice to establish his liability in a civil suit. It will not suffice to establish a criminal liability, because an accessory must make the venture his own; the crime must be a fulfillment in some degree of an enterprise which he has adopted as his; his act must be in realization of his purpose.[5] That was not in the least true as to the return of the cheques to New York. Their return was a matter of entire indifference to Paglia; indeed, it would have suited his purposes better, had they been lost or destroyed as soon as he got the money, for that would have made detection more difficult. If only that would have been the evidence against Paglia, the withdrawal of Count Six was not a valid consideration for his change of plea, and since the prosecution does put it forward as valid, unless it proves that it has other evidence, the use of it vitiated the sentence and alone demands a resentence.

We have already held in United States v. Chiarella, 2 Cir., 184 F.2d 903, 909, that § 2(b) of the Criminal Code, 18 U.S. C.A. § 2(b), does not enlarge criminal liability; we reaffirm that ruling.

Order denying leave to withdraw the plea of guilty affirmed.

Order denying vacation of the sentence reversed and cause remanded.

4. United States v. Moore, 7 Cir., 166 F.2d 102; United States v. Norstrand Corp., 2 Cir., 168 F.2d 481.

5. Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919; United States v. Peoni, 2 Cir., 100 F.2d 401; United States v. Koch, 2 Cir., 113 F.2d 982; Morei v. United States, 6 Cir., 127 F.2d 827, 830; United States v. Simonds, 2 Cir., 148 F.2d 177, 178; United States v. Di Re, 2 Cir., 159 F.2d 818, 819.