UNITED STATES of America ex rel. Jacob WISSENFELD, Relator-Appellant,

v.

Walter H. WILKINS, Warden, Attica State Prison, Attica, New York, Respondent-Appellee.

No. 341, Docket 25691.

United States Court of Appeals Second Circuit.

Argued June 10, 1960.

Decided Aug. 3, 1960.

Richard W. Hulbert, New York City (Anthony F. Marra, New York City, on the brief), for relator-appellant.

Frederick E. Weeks, Jr., Asst. Atty. Gen. of New York (Louis J. Lefkowitz, Atty. Gen. of New York and Irving Galt, Asst. Sol. Gen. of New York, New York City, on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, and CLARK and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge.

This is an appeal by the relator, Jacob Wissenfeld, from the dismissal of his petition for a writ of habeas corpus to obtain his release from New York's Dannemora State Hospital.[1] Wissenfeld is confined there under sentence of 13½ to 20 years imprisonment[2] as a third felony offender after his plea of guilty in October 1953 to a charge of burglary in the third degree.

Relator filed this petition for the writ —his fourth submitted to the federal court—in November 1958. His claim of violation of his federal constitutional rights, which we will presently describe in greater detail, is that his plea of guilty was induced by promises of the state prosecuting authorities, made without intention of adherence to them, that he would receive a 5 or 6 year sentence and, further, that his then assigned counsel connived with the state authorities to obtain his reliance upon these promises and his plea of guilty. The district court held a hearing upon these allegations at which Wissenfeld, testifying without the assistance of counsel, was the sole witness. Subsequently, the court entered brief findings stating that it was not convinced of the truth of relator's testimony and that "on the evidence * * * no such promise was made to him, and * * * his plea of guilty was not made in reliance on any such alleged promises, but was a voluntary plea made at the time he was represented by assigned counsel and that he particularly stated at the time of his plea that no promises had been made to him."

On this appeal relator contends, first, that the district court's findings, in view of relator's unrebutted testimony and certain comments of the state trial judge at the time of sentencing and certain circumstantial evidence, were clearly erroneous; second, he argues that the district court, by its failure either to assign counsel to assist him in the presentation of his case or itself to direct the appearance of those who had allegedly cooperated in inducing his plea

1. During the course of the suit, the relator was transferred from Attica State Prison to Dannemora. The state has agreed to abide by the outcome of the litigation, regardless of the fact that the warden of Attica is still nominally the respondent.

2. Wissenfeld was initially sentenced to 15 to 20 years imprisonment, but has since been resentenced to the lesser term for reasons not here relevant.

of guilty and whose testimony could reasonably be expected to support or discredit his story, abused its discretion because it deprived relator of a fair and meaningful hearing upon his claims. We do not think the court's findings were clearly erroneous, but having regard for all the circumstances of this case, we agree that the hearing afforded relator was inadequate and therefore reverse the order dismissing the petition and remand the case for a further hearing.

Prior to a consideration of the points urged by relator, two preliminary questions must be considered. The first is whether relator has exhausted his state court remedies and, more specifically, whether his failure to apply to the Supreme Court for a writ of certiorari after the New York state courts had rejected his federal constitutional claim bars him from obtaining relief in the federal district court by means of a writ of habeas corpus. The second preliminary matter is whether relator's petition for the writ states upon its face a claim of a federal constitutional violation.

### Exhaustion of State Remedies.

 The district court found as a "fact," though without any statement of the basis for its finding, that relator had exhausted his state court remedies. Since the state does not challenge this finding on appeal, we could accept this determination without examination of its correctness.[3] See Thomas v. State of Arizona, 1958, 356 U.S. 390, 392 note 1, 78 S.Ct. 885, 2 L.Ed.2d 863. However, in view of the important role the exhaustion doctrine has assumed in the maintenance of a proper balance of authority between the national and state governments in our federal system, see

Darr v. Burford, 1950, 339 U.S. 200, 204–208, 70 S.Ct. 587, 94 L.Ed. 761; 28 U.S.C. § 2254, we think it is appropriate that we consider the exhaustion question, although it has not been presented to us by the parties. We are, of course, in no way bound by the district court's determination of this question, because, regardless of the appellation attached to the lower court's finding, the question whether state remedies have been exhausted is one of law rather than fact.

In December 1954 and again in February 1955, Wissenfeld presented his claim that his plea of guilty was the result of false promises to the New York state courts by writ of error *coram nobis*. The claim was rejected by the Westchester County Court without a hearing, and this decision was affirmed by the Appellate Division, People v. Wissenfeld, 1956, 1 A.D.2d 1047, 153 N.Y.S.2d 573, and by the Court of Appeals, 1957, 2 N.Y.2d 812, 159 N.Y.S. 2d 831, 140 N.E.2d 744. No application for certiorari was submitted to the Supreme Court until about nine months after the decision by the New York Court of Appeals, and the application, when finally presented, was rejected by the clerk as filed out of time. Relator then presented a petition for a writ of habeas corpus to the federal court, which petition was dismissed on the ground that relator had not exhausted his state court remedies because of his failure to file a timely application for certiorari. In part in an effort to cure this defect, relator filed a new *coram nobis* application in the Westchester County Court, but this petition was denied on the ground that no "materially new or additional facts" were presented;[4] the Appellate Division denied leave to appeal *in forma pauperis*, an order which is

3. So far as we are able to determine from the record the state did not question the relator's statement that he had exhausted his state remedies even before the district court.

4. Under New York law the courts of the state ordinarily will not entertain repetitious *coram nobis* applications, when the facts and grounds for relief alleged have previously been considered and rejected. People v. Zurak, 1956, 1 A.D. 2d 832, 148 N.Y.S.2d 321; People v. Martine, 1951, 278 App.Div. 966, 105 N.Y.S.2d 673, affirmed 1952, 303 N.Y. 789, 103 N.E.2d 897.

not appealable to the Court of Appeals. Relator thereupon filed the present habeas corpus application.

■ The normal rule is that an application to a federal court for a writ of habeas corpus by a prisoner confined under a state court judgment of conviction will not be entertained until the prisoner has exhausted his state court remedies and has applied to the Supreme Court for review either by appeal or certiorari. Darr v. Burford, supra; Ex parte Hawk, 1944, 321 U.S. 114, 116–117, 64 S.Ct. 448, 88 L.Ed. 572. In special circumstances, however, application to the Supreme Court may be dispensed with. E. g., Thomas v. State of Arizona, supra, 1958, 356 U.S. at page 392 note 1, 78 S.Ct. at page 886; White v. Ragen, 1945, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348. "Whether such circumstances exist calls for a factual appraisal by the [district] court in each special situation." Frisbie v. Collins, 1952, 342 U.S. 519, 521, 72 S.Ct. 509, 511, 96 L.Ed. 541.

■ Though relator failed to make timely application for certiorari after the denial of relief by the New York Court of Appeals, it may be possible that special circumstances exist in this case which would excuse compliance with this requirement. Relator's petition submitted to the district court alleges that some four weeks after the Court of Appeals decision, long before the expiration of the 90-day period allowed for the filing of petitions for certiorari, he was transferred from Attica State Prison to New York City, in order that a hearing might be held on his petition attacking the validity of one of his earlier convictions. Wissenfeld was held in New York City for more than eight months, and, though the record is far from clear on the point, it appears that during this time he did not have access to his papers and legal materials. If this was due simply to Wissenfeld's neglect in not bringing his papers with him from Attica, or if, though he realized that he would be confined in New York City for some time, he made no effort through prison officials to procure his papers, his failure to apply for certiorari cannot be excused. If, on the other hand, Wissenfeld was deprived of his papers at the time he left Attica and was prevented by the state from obtaining them during his lengthy detention in New York City, the state's conduct might well be a "special circumstance" which would excuse the relator's failure to file an application for certiorari. See United States ex rel. Rooney v. Ragen, 7 Cir., 1946, 158 F.2d 346, 352, certiorari denied 1947, 331 U.S. 842, 67 S.Ct. 1532, 91 L.Ed. 1853. Since the record is devoid of information as to the reason why Wissenfeld did not have access to his papers while detained in New York City, we must leave this question for exploration and resolution by the district court in light of all the facts disclosed by a further hearing.

■ Entirely independent of the above ground for invocation of the special circumstances rule, it is possible that relator's failure to apply for certiorari, even if due to his own neglect, should not now bar relief in the federal court, since it appears that the defect can no longer be cured by a new application to the New York courts. As indicated by the denial of Wissenfeld's most recent application to the Westchester County Court, the state courts are now closed to him on an independent state ground of decision—the repetitious character of his petitions—from which certiorari will not lie, see Wade v. Mayo, 1948, 334 U.S. 672, 680–681, 68 S.Ct. 1270, 92 L.Ed. 1647; Fox Film Corp. v. Muller, 1935, 296 U.S. 207, 56 S.Ct. 183, 80 L.Ed. 158. Unless the exhaustion statute, 28 U.S.C. § 2254, be regarded as requiring an applicant to exhaust not only presently available state remedies but also those formerly open but now foreclosed to him, relator would not now be barred by his earlier failure to apply for certiorari. See generally United States ex rel. Williams v. La Vallee, 2 Cir., 1960, 276 F.2d 645, 648 and note 5; Hart, Foreword to The Supreme Court, 1958 Term, 73

Harv.L.Rev. 84, 112–14 and n. 85 (1959). Since it may not be necessary to resolve this difficult question of statutory construction after the hearing on remand, we do not pass upon it at this time.

The Sufficiency of Relator's Allegations.

■ The second preliminary issue referred to above was whether the allegations of Wissenfeld's petition were sufficient, assuming that they could be proved, to constitute a violation of his federal constitutional rights. The primary thrust of the claim is that the prosecuting officials breached their promise to him to recommend a sentence less than that which he received. As we have ourselves noted in the past, such an allegation does not by itself rise to constitutional stature, particularly where the defendant is represented by counsel or is experienced in the ways of the criminal courts, for the defendant must be supposed to know, if he is experienced, or to be advised, if he has counsel, that such a promise is in no way binding upon the court and ought not to affect the prisoner's judgment in pleading. United States v. Paglia, 2 Cir., 1951, 190 F.2d 445, 447. Nor do the cases cited by relator's counsel, Smith v. O'Grady, 1941, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859; Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830, support the broad proposition that every promise by the prosecuting officers inducing a plea of guilty is, when unfulfilled, ground for the claim that the prisoner's federal constitutional rights have been violated.

We understand Wissenfeld's claims, however, to go beyond a bare promise unfulfilled. He asserts, as well, that the state prosecuting authorities did not intend to carry out the promises when they were made to him and further that his own counsel was privy to the state's plans to induce his plea of guilty by false promises and that his counsel aided in its execution. The making of such promises in bad faith and the connivance of defense counsel in the scheme would be trickery so flagrant as to violate relator's constitutional rights. A plea of guilty so induced would be subject to attack as in violation of due process. Smith v. O'Grady, supra; Walker v. Johnston, supra; Kercheval v. United States, 1927, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009; United States v. Parrino, 2 Cir., 1954, 212 F.2d 919; United States v. Paglia, supra; United States v. Lias, 4 Cir., 1949, 173 F.2d 685.

Relator's Testimony at the Hearing.

In order to facilitate understanding of the points urged by the relator's counsel, we summarize the testimony of relator at the district court hearing concerning the circumstances of his arrest, detention, and subsequent plea of guilty:

Relator was arrested in New York City in September 1952 in connection with the investigation of a series of burglaries, and robberies in the city and in Westchester County. The same day he was visited by an Assistant District Attorney of Westchester County, Leonard Rubenfeld, who along with city police officers told him that if he were cooperative he would receive a suspended sentence in New York and would be returned to California to serve out the 19 months remaining on a sentence there. Immediately thereafter, with assurances from District Attorney Fanelli of Westchester County that he would be treated with consideration if he pointed out the scenes of his burglaries and robberies, Wissenfeld traveled to Westchester and with Rubenfeld and other officers drove to various homes, a number of which he admitted burglarizing. In March 1953 Wissenfeld was finally arraigned in Westchester County Court and Robert Dempsey was assigned as counsel.

Though Rubenfeld, during the interval between the arrest and arraignment, had repeated his promises to Wissenfeld that the latter would receive a suspended sentence, late in the spring of 1953 Rubenfeld told him that because of the heavy publicity his case had received, it would not be possible to dispose of the matter with a suspended sentence. He

said that, instead, Wissenfeld would receive a one-year sentence, but his time already spent in jail would be credited against this sentence. Still later, Wissenfeld's counsel, Dempsey, told relator that he and Rubenfeld had talked to the complaining witness, allegedly a local figure of considerable influence, and that the complaining witness would not agree to a one-year or suspended sentence unless Wissenfeld returned a brooch, of which he had denied any knowledge. Dempsey also told relator that Judge Donohoe, who was to preside over his case, had refused to say what sentence he would impose upon a plea of guilty to burglary third degree, the minimum charge that was acceptable to the complaining witness.

Apparently because Dempsey was on vacation, and Wissenfeld had agreed to await his return before pleading, nothing further happened until October 1953. On October 14, relator was brought into court to plead. As soon as court had convened Dempsey, Rubenfeld, and two New York City police officers adjourned with Judge Donohoe to his chambers. After an hour long conference they emerged and Dempsey and Rubenfeld stated to Wissenfeld that Judge Donohoe would not accept anything less than a plea of guilty to burglary third degree, upon which a five or six year sentence would be imposed. Dempsey cautioned relator to say, if asked by the judge, that no promises had been made to him, on pain of receiving a more severe sentence. Relator then entered his plea of guilty to burglary third degree, and repeatedly stated in response to the judge's questions that no promises had been made to him.

The following day Rubenfeld told the newspapers that Wissenfeld might receive a sentence of as much as 15 years on his plea, Wissenfeld, believing that Rubenfeld had no intention of adhering to his promises, made contact with the Democratic candidate for county judge and offered him certain information in exchange for the candidate's intercession with the Governor on his behalf. Nothing came of this effort, however, except a warning from Dempsey that meddling of this kind could lead to a more severe sentence. On November 12, 1953 the relator was brought before Judge Donohoe for sentencing. Dempsey assured him that he had just spoken to Rubenfeld and that a sentence of 5 or 6 years would be imposed. The relator was called forward and a sentence of 15 to 20 years was imposed by the court. The relator immediately tried to withdraw his plea of guilty, obliquely referring to the promises made to him, but the court cut him off with the statement, "Your application is denied. Your bargaining days are over."

### The Support for the District Court's Findings.

Relator contends that the district court's findings that no promises had been made to him and that his plea of guilty was voluntarily made were erroneous. He concedes, as he must, that he has the burden of persuasion upon his claims in a habeas corpus proceeding, Johnson v. Zerbst, 1938, 304 U.S. 458, 468–469, 58 S.Ct. 1019, 82 L.Ed. 1461, that under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the district court's findings of fact may not be set aside unless clearly erroneous, United States ex rel. Rogers v. Richmond, 2 Cir., 1959, 271 F.2d 364, 369, certiorari granted 1960, 361 U.S. 959, 80 S.Ct. 605, 4 L.Ed.2d 541, and that where findings of fact are based largely upon an evaluation of the credibility of a witness rather than upon documentary evidence or factual inferences to be drawn from the testimony, an appellate court with only "cold print" before it is ill placed to reject the district court's evaluation. Albert ex rel. Buice v. Patterson, 1 Cir., 155 F.2d 429, 432, certiorari denied 1946, 329 U.S. 739, 67 S.Ct. 83, 91 L.Ed. 638; see Morris Plan Industrial Bank v. Henderson, 2 Cir., 1942, 131 F.2d 975, 977. Relator argues, nonetheless, that although the district court would have been entitled to reject his testimony as a fabrication were that the only evidence before it,

there was other evidence which so supported his testimony that it was clearly erroneous for the court to reject it as untrue. He points particularly to the sentencing court's statement that Wissenfeld's "bargaining days * * * [were] over" as an indication of an awareness on the part of the court that a bargain had been struck between the defendant and the prosecuting officials. He also points out that the state made no effort to rebut his story by the calling of witnesses or the introduction of other evidence and suggests that this warrants an inference that these witnesses would have testified unfavorably to the state. He further suggests that the very complexity of his tale and the number of persons allegedly party to the promises lend credibility to it, since it is improbable that anyone would fabricate a story which so many persons could refute, if false. Finally, he points out that the story is one that has been adhered to by him since the time of sentencing [5] and states that we should discount the fact that he said at the time of his plea that no promises had been made to him, for this was part and parcel of the deception practiced upon him.

We do not think the district court's findings may be rejected by this line of argument. Central to relator's case was his own testimony. The district judge observed him on the stand and considered his demeanor and the manner in which he told his story. We cannot say that he was not entitled to disbelieve this testimony. To quote from an opinion of the First Circuit, "[S]o many factors affect credibility that it is hard to conceive of a situation in which we would say that it was clearly erroneous for a trial court to disbelieve, or find insufficient, oral testimony, even if uncontradicted, given with respect to a basic issue by a party having the burden of persuasion." Albert ex rel. Buice v. Patterson, supra, 155 F.2d at page 432.

Indeed, we have only recently refused to overturn a district judge's rejection of a similar story of a fraudulently induced guilty plea in another habeas corpus proceeding. United States ex rel. Moore v. Martin, 2 Cir., 1959, 273 F.2d 344. See also Cranor v. Gonzales, 9 Cir., 1955, 226 F.2d 83; Ammons v. King, 8 Cir., 1943, 136 F.2d 318.

The surrounding evidence upon which relator relies is hardly conclusive in his favor. The mention of relator's "bargaining days" by Judge Donohoe is equally explicable as a reference to Wissenfeld's attempts to interfere in the county judgeship election or to his efforts to obtain a suspended sentence as it is to any factual promises made by Rubenfeld. Although the failure to call a witness sometimes permits an inference by the trier of fact that his testimony would be unfavorable to a party, see United States v. Cotter, 2 Cir., 60 F.2d 689, 691–692, certiorari denied 1932, 287 U.S. 666, 53 S.Ct. 291, 77 L.Ed. 575, certainly no such inference is required to be drawn, particularly as in the present case, when the state may well have believed that relator's story was so improbable that it would be rejected without the necessity of introducing rebutting testimony. And, while undoubtedly the district court could, if it chose, have discounted the significance of relator's repeated assurances at the time he pled guilty that no promises had been made to him, it was not compelled to do so and was entitled to give credence to these admissions rather than to Wissenfeld's later story. Surely, we cannot say that the district court's failure to accord much weight to this circumstantial evidence favorable to relator was clearly erroneous.

### The Failure of the District Court to Appoint Counsel for Relator or Itself to Call Witnesses.

The very fact that the scope of review by the federal courts of appeals over

---

5. Attached to relator's affidavit submitted with his petition for the writ is a copy of a letter sent by the relator to Dempsey in the fall of 1954 recounting the incidents leading up to his plea in substantially the same terms as the story told by him at the hearing before the district court.

district court findings of fact is so narrow and, consequently, as is true in this case, the reviewing court is rarely warranted in holding that the findings below are clearly erroneous points up the importance of a full and fair hearing at the trial court level. The additional fact that the applicant for the writ of habeas corpus must bear the burden of persuading the trial court, and the appellate court upon review, of the validity of his claims makes the prisoner's task a difficult one at best and an almost impossible one in the event his case is inadequately presented. Cognizant of these considerations, relator contends that the hearing accorded him was inadequate because the district judge failed either to appoint counsel to aid him in preparing and presenting his case or itself to call witnesses whose testimony might substantiate his claims.

 Although the federal courts have increasingly recognized the importance of representation by counsel in all criminal proceedings, see Ellis v. United States, 1958, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060; cf. United States v. Paglia, supra, it is settled that there is no constitutional right to representation by counsel in habeas corpus proceedings in the federal courts. Dorsey v. Gill, 80 U.S.App.D.C. 9, 148 F.2d 857, certiorari denied 1945, 325 U.S. 890, 65 S.Ct. 1580, 89 L.Ed. 2003. In spite of the fact that one may question the rationale of this rule—that habeas corpus proceedings are civil rather than criminal, see Dorsey v. Gill, supra; Brown v. Johnston, 9 Cir., 91 F.2d 370, certiorari denied 1937, 302 U.S. 728, 58 S.Ct. 58, 82 L.Ed. 563—in light of the more recent decisions upon analogous issues, see, e. g., Griffin v. People of State of Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; cf. Daugharty v. Gladden, 9 Cir., 1958, 257 F.2d 750, 756–757, the rule has much to commend it. We cannot ignore the fact that a very large proportion of applications of this kind submitted to the federal courts are utterly frivolous, see Brown v. Allen, 1953, 344 U.S. 443, 536–537, 73 S.Ct. 397, 437, 97 L.Ed. 469, and

that the imposition of any requirement that counsel be appointed in all such cases would place a burden both upon the courts and the bar. We do not suggest that the settled rule be overturned.

 However, in certain circumstances the appointment of counsel to assist a prisoner in the presentation of his case is highly desirable. Where a petition for the writ presents a triable issue of fact the clear presentation of which requires an ability to organize factual data or to call witnesses and elicit testimony in a logical fashion it is much the better practice to assign counsel. Hodge v. Huff, 78 U.S.App.D.C. 329, 140 F.2d 686, certiorari denied 1944, 322 U.S. 733, 64 S.Ct. 946, 88 L.Ed. 1567; Ex parte Rosier, 1942, 76 U.S.App.D.C. 214, 133 F.2d 316, 333; cf. Thomas v. United States, 6 Cir., 1954, 217 F.2d 494. As we have ourselves implicitly recognized, rarely will a prisoner have sufficient ability or training to recognize the facts which are important to his case or to present his side of the dispute in an orderly manner. See, e. g., United States ex rel. Dennis v. Murphy, 2 Cir., 1959, 265 F.2d 57; United States v. Paglia, supra. "Lack of [such] technical competence * * * should not strangle consideration of a valid constitutional claim." Brown v. Allen, supra, 344 U.S. at page 502, 73 S.Ct. at page 443.

Upon some occasions, when complex factual data must be developed in order to support the prisoner's position, the assistance of counsel not only may be desirable but will be necessary if the prisoner's case is to be adequately presented. In such circumstances it may be reversible error for the district court to fail to appoint counsel to assist the applicant or to assure in other ways that the prisoner receives a fair and meaningful hearing.

The best means of assuring a fair hearing will vary from case to case. Where the claims asserted are developed in the state court record, there may well be no necessity to appoint counsel to aid the petitioner. And when the factual issues are simple there may be little need

for counsel, if the court itself carefully elicits the facts by its own questioning. In some other circumstances where difficult or complex factual issues seem likely to arise it will be appropriate and the court may find it profitable to hold a preliminary examination of the prisoner to clarify the issues and to make certain that bona fide issues of fact, the resolution of which is necessary to decision of the case and with respect to which appointment of counsel would be useful, are presented. If upon such a preliminary examination, the issues are not those raised in the papers, or what appears at first glance to be a federal question the resolution of which requires a determination of fact is not actually presented by the record, the court, of course, may dispose of the case without appointment of counsel. If, on the other hand, it becomes clear after questioning of the prisoner that substantial and complex factual issues are raised, counsel should then be appointed for the petitioner. In some cases the court may find it expedient, as an alternative to the appointment of counsel, itself to call witnesses and to question them, or to direct the respondent to produce witnesses to support its position. Other procedures, such as requiring the state to submit affidavits from those persons having information with respect to the prisoner's claims, no doubt will suggest themselves from case to case. The purpose of any procedure selected by the district court is to assure that the prisoner's claims receive fair, adequate, and meaningful consideration. Any procedure chosen should be such as is reasonably calculated to achieve this goal.

■ Measured by these standards, we do not think that the hearing accorded Wissenfeld was an adequate one. Though his claims turned solely upon a factual determination, though the tale was exceedingly complex and the legal significance of each facet of it was difficult to fathom, and though many other persons could reasonably have been expected to shed light upon the truth or falsity of it, the district court did no more than listen to a recital of relator's story at a brief hearing. No counsel was appointed on Wissenfeld's behalf and no other witnesses were called by the court nor did the court ask for any affidavits. Because of his limited abilities, relator's story was necessarily presented in a fumbling and disorganized fashion, unlikely to impress favorably even the most sympathetic judge.

Under these circumstances the district court was required to do more to insure that relator's case would be fairly and fully presented, whether by the calling of additional witnesses or by appointing counsel who could subpoena such persons. It may well be true that these witnesses could be expected only to refute relator's tale (and that they may do so upon a further hearing), but it is surely improper to make such an assumption until they have been called.

■ Relator has had no prior hearing either in the state or federal courts upon his claim that his plea of guilty was induced by trickery. If the district court had rejected his present petition out of hand, entirely without a hearing, we would surely have reversed, for it is well settled that a prisoner is entitled to a hearing when his application raises a federal constitutional question the resolution of which turns upon issues of fact. Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830. A perfunctory, inadequate hearing is hardly a greater recognition of the prisoner's rights than the failure to afford any hearing at all. We hold explicitly only what has always by implication been the law—that the hearing afforded a prisoner must be a fair one considering all the circumstances, adequate in its procedures to allow a meaningful presentation of the prisoner's claims.

We commend Richard W. Hulbert for his exceptionally able brief and oral argument on behalf of the relator.

Reversed and remanded for proceedings in accordance with this opinion.