**UNITED STATES of America**

v.

**Earl Roy WALLACE, Richard Albert Romero.**

**Crim. Nos. 63586, 63626, 63633.**

United States District Court
W. D. Texas,
El Paso Division.

May 14, 1963.

Earl Roy Wallace and Richard Albert Romero pro se.

THOMASON, District Judge.

This is a Motion to vacate and set aside the judgments and sentences of petitioners, Richard Albert Romero and Earl Roy Wallace, made to the United States District Court for the Western District of Texas, El Paso, Texas, pursuant to Title 28 U.S.C.A. § 2255.

The petitioners were arrested at El Paso, Texas on August 26, 1958, by postal inspectors and city detectives in a downtown hotel room. The postal inspectors had been notified earlier that day that a forged Postal Money Order for $100.00 had been passed at a men's clothing store in return for a $45.00 sports coat and $55.00 in change. The coat was to be delivered to the petitioners' hotel room, and it was there that they were arrested. At the time of their arrest petitioners had a total of $654.00 in currency, seven Postal Money Orders made out for $100.-00 each, and three rolls of 4¢ postage stamps.

The next day, on August 27, 1958, both defendants made full confessions to postal inspectors Irwin M. Spector and D. C. Marshall. The confessions stated that in August, 1958, defendant Wallace, a fugitive from Kansas City, Missouri, met defendant Romero, a parolee from the Colorado State Prison in Denver, Colorado. On August 23, 1958, the two petitioners and a companion left Denver in a 1956 Oldsmobile which defendant Wallace admits having previously stolen at Rock Island, Illinois, in July, 1958, and drove to Kiowa, Colorado for the purpose of burglarizing the United States Post Office there. They removed the hinges from the back door of the Post Office and loaded the safe into the trunk of their car. They returned to Denver, broke open the safe, removed money, postage stamps, Postal Money Orders, and various other paraphernalia from the safe, and then dumped the safe into the Platte River.

The two petitioners left Denver on August 24 with the intention of forging

and passing the Money Orders. Defendant Wallace, in his confession and in the October 2nd sentencing before this Court, admitted that he hoped to obtain some $20,000.00 and then go to the West Coast and start a business. The two petitioners passed about ten $100.00 Money Orders in Denver and Albuquerque and arrived in El Paso on August 25th. In El Paso they passed three $100.00 Money Orders, these forgings and passings being the basis of charges against them in El Paso.

On September 4, 1958, the petitioners were arraigned at a regular session of the United States District Court for the Western District of Texas, El Paso Division, before this Court. Both entered pleas of guilty to the first four counts of the indictment, covering the forging and passing of the first two $100.00 Postal Money Orders in El Paso. The District Attorney dismissed the last two counts covering the forging and passing of the third Postal Money Order. The Court deferred the sentencing until the presentence investigation be made.

Several days later the authorities in El Paso received copies of warrants from Colorado charging both defendants with breaking and entering a United States Post Office in Kiowa, Colorado, and theft of Government property therein, and an additional charge of violation of the Dyer Act against defendant Wallace. On September 11, 1958, according to the records in the possession of the Clerk of the United States District Court, the petitioners signed a waiver of indictment on the breaking and entering and theft charges, and on September 18, 1958 they signed a consent to transfer of jurisdiction over this charge from Colorado to El Paso. On September 25, 1958, petitioner Wallace was brought into open court and signed the waiver of indictment on the charge of transporting a stolen automobile in interstate commerce in violation of the Dyer Act.

On October 2, 1958, the petitioners again appeared before this Court. Both defendants stated that they understood the nature and seriousness of the charges against them and did not desire to have a lawyer. On arraignment both pleaded guilty to the two counts in case No. 63633, charging breaking and entering a U. S. Post Office with intent to commit larceny and the theft therein. Then defendant Wallace was arraigned in case No. 63626, on the Dyer Act charge of transporting in interstate commerce a 1956 Oldsmobile Sedan knowing said vehicle to be stolen, and he pleaded guilty to this count. Therefore, at this point defendant Wallace had pleaded guilty to the following felonies:

1) *Forging and passing* in violation of 18 U.S.C. § 500, 4 counts. (Case No. 63586).

2) *Breaking and entering and theft of government property* in violation of 18 U.S.C. § 2115, and 18 U.S.C. § 1707, 2 counts. (Case No. 63633).

3) *Dyer Act* in violation of 18 U.S. C. § 2312, 1 count. (Case No. 63626).

Defendant Romero had pleaded guilty to the first two of these felonies, forging and passing, and breaking and entering and theft of government property.

Following arraignment on the charges transferred from Colorado, the Court reviewed the charges against petitioners and their prior criminal records from the presentence report of the Probation Officer. The petitioners were then sentenced, Wallace to 15 years (5 years on each of the three felony charges) and Romero to 10 years (5 years on each of the two felony charges).

28 U.S.C. § 2255 provides that a prisoner claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States may move the Court which imposed the sentence to vacate, set aside, or correct the sentence. The Court must "grant a prompt hearing" to "determine the issues and make findings of fact and conclusions of law * * * [u]nless the motion and the files and records of the case conclusively

show that the prisoner is entitled to no relief".

The motion of petitioners Wallace and Romero alleges that their pleas of guilty were involuntary, in that they were induced by promises from the Federal law enforcement officials. Two separate promises made to defendants are alleged:

1) That on August 27, 1958, *Postal Inspector Mr. Irwin Spector* "assured them that all the counts would be lumped into one general sentence not to exceed the stated five year sentence in exchange for their cooperation. To this the petitioners agreed to cooperate and they each made a statement which was signed that afternoon".

2) That after the Colorado warrants were received, the *U. S. Commissioner*, with the authorization of the *Judge or prosecutor*, promised that they would receive only a 5 year sentence: "The petitioner Wallace raised this question and disclosed to the commissioner the general agreement between the petitioners and postal inspectors on this point, and asked the commissioner for his assurance. The commissioner then left the room and when he returned he stated that he had talked to the Judge or the prosecutor and that it was agreed that all the charges would be run together. The petitioners thereafter plead guilty to the additional charges from Colorado with the firm understanding that they would receive but one general sentence of 5 years."

This Court's long and exhaustive examination of the "files and records" in this case has been prompted by a careful reading of the most recent and authoritative Supreme Court interpretation of 28 U.S.C. § 2255 in Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L. Ed.2d 473, and is an attempt to follow the guidelines set down in that decision. It is the belief of this Court that the case at hand is distinguishable from the Machibroda facts and that no hearing is required under section 2255 by the rationale of that decision.

In both this case and the Machibroda case, allegations were made by the defendants in their section 2255 motions that promises had been made to them by public officials that if they pleaded guilty a certain stated minimum sentence would be given. The Court in Machibroda found that there was not a conclusive showing in the "files and records of the case" that the prisoner was not entitled to relief because the record could cast no light on the truth of the petitioner's allegations because they involved "occurrences outside the courtroom" and the circumstances were not of a kind which the Judge could "completely resolve by drawing upon his own personal knowledge or recollection". The Supreme Court speaks of an individual investigation in each separate case and speaks of that case as a "marginal case". The facts of each case must be determined by the District Judge:

> "What has been said is not to imply that a movant must always be allowed to appear in the district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be. The language of the statute does not strip the district courts of all discretion to exercise their common sense. Indeed, the statute itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner."

The finding of this Court, in reviewing the "files and the record", is that it is conclusively shown that the allegations of the defendants' petition are meritless.

This Court has reviewed the following items in the "files and records" of this case: The transcript of the arraignment

of September 4, 1958, and of the arraignment and sentencing of October 2, 1958; the Probation office file including the presentence report, and correspondence from the petitioners after commitment to the penitentiary; the files of the U. S. Commissioner; the papers and records of the case in the files of the Clerk of the court. The review of the files and records by the Court is as follows:

(1) A review of the transcripts of the arraignment on September 4, 1958 and the arraignment and sentencing on October 2, 1958 supports a conclusive showing that the petitioners' pleas of guilty were made voluntarily and with knowledge that the sentence would be assessed by the Court, with regard to the crimes committed and prior criminal record, and would not be influenced by "promises" or "opinions" of any Federal officials.

The petitioners were arraigned on the forging and passing charges on September 4, 1958. District Attorney Hammond read the first three counts of the six count information and the petitioners pleaded guilty to each of the three counts. After the reading of the fourth count, petitioner Wallace replied:

"Guilty, but I'd like to say something. When we were arrested they told us that we would be charged with passing three Money Orders and that we would be charged with three counts only and here they have six counts. What is that, Your Honor?"

It was explained that for each of the three Money Orders passed in El Paso there were two counts, one charging the offense of forging, and the other charging the offense of passing the Money Orders. Then the following discussion took place:

*Defendant Wallace:* "Does it make any difference, is it all going to be put together, is it going to be six different sentences?"

*The Court:* "I would assume they are all separate counts."

*Defendant Wallace:* "We were told it would be just three counts that we would be charged with."

*Mr. Hammond:* "Who told you that?"

*Defendant Wallace:* "The ones that arrested us."

*The Court:* "I take it, without making any promise or anything else, that it does involve only three money orders but they just charge you in one count with forging and in the other with passing it."

*Mr. Hammond:* "Your Honor, for the sake of brevity, and it really doesn't make any difference, I move the Court to dismiss the fifth and sixth counts."

*Defendant Wallace:* "It is not necessary, I just wanted to clarify it."

*The Court:* "You are entitled to that. You ask any questions that you want to and the District Attorney, I am sure, will give you frank answers, and so will the Court as far as his knowledge goes. Now then, the District Attorney moves to dismiss the last two counts * * *."

This exchange indicates that the prisoners may have been told prior to the arraignment that some of the counts of the information would be dismissed. This is a common practice in Federal Courts, and it is common for the last several counts involving similar offenses to be dismissed by the District Attorney upon receiving pleas of guilty on the first counts. However, it is quite another thing to say that the defendant had been promised by a government official that the sentence would only be five years.

The transcript gives no indication that the Court or the District Attorney were contemplating lumping all the counts together for one five year sentence or that the petitioners were led to believe so. The Court stated in reply to Defendant

Wallace's question as to whether it is "going to be six different sentences":

> *The Court:* "I would assume they are all separate counts."

This answer bears the implication that each "separate" count carried with it a "separate" sentence.

At the end of the September 4 arraignment, the Court stated: "Case referred to the Probation Officer and you will be sentenced next week." Unless the Court was consciously attempting to put on a false front, it would seem that he was following the usual procedure of receiving the Probation Officer's report prior to making his determination as to the amount of the sentence.

█ At the hearing before the Court on October 2, 1958, the petitioners were arraigned on the charges sent from Colorado and sentenced. The defendants contend in their motion that between the September 4 and the October 2 hearings, further promises of a five year sentence were made to them. Now, in addition to the promise which petitioners allege was made to them on August 27 by Postal Inspector Spector "that all counts would be lumped into one general sentence not to exceed the stated five year sentence", they allege that they received a second promise from the U. S. Commissioner, with the approval of the Judge or prosecutor. That a Commissioner, before whom prisoners have been brought, would leave the room and make a private deal concerning the sentencing with the Judge or the prosecutor is, of course, an unheard of procedure. Any such "deal" would mean that both the Commissioner and the Judge had violated their sworn judicial duties and to make such a finding, the facts and circumstances as shown in the "files and records of the case" must provide at least some corroborating evidence of the truth of the allegations. A careful examination of the files and records has yielded no such corroborating evidence.

█ The transcript of the October 2 arraignment and sentencing provides persuasive evidence that the petitioners pleaded guilty voluntarily, and that, as they stood before the Judge for sentencing, they were not laboring under any misimpression that their sentence would be only five years because of a prior "deal" with the authorities. At no point during the October 2 hearing, even after they had been sentenced to ten and fifteen years, respectively, did petitioners Romero and Wallace mention to the Court that their pleas of guilty had been obtained by promises from either the Postal Inspector or the U. S. Commissioner, Judge, or prosecutor.

When the sentence was read to the defendants and they finally knew that they had been given sentences of 10 and 15 years, one would have expected some objection by them if the "deal" had not been carried through by the officials. Again, the record shows that no objection was made. Defendant Wallace, throughout his court appearances, was a vocal and argumentative advocate for his rights. At the September 4 arraignment he broke into the reading of the counts to insist on seeing that some of the counts would be dismissed as he had been "told". It is almost inconceivable that having been persuaded by the public officials to plead guilty and then double-crossed by them by a failure to give him the promised sentence, he would make no objection in court immediately after the sentencing.

A second element in the transcript of the October 2 hearing lends strong support to a conclusive finding that these petitioners are not entitled to relief. Following the reception of the guilty pleas, this Court referred to the Probation Officer's report for the details of the crimes petitioners were charged with and their prior criminal records. Petitioners, particularly Wallace, spoke up and several times argued with the Court concerning his official F.B.I. criminal record. On page 16 of the transcript, Wallace objected that he was wanted in Kansas City for robbery and not for armed robbery. On page 18, he denied that he had planned the crime by himself. And beginning on page 19, for al-

most two pages in the record, Wallace had a heated exchange with the Judge as to the correctness of the F.B.I. report and the seriousness of his prior criminal record.

This long and argumentative exchange between the Defendant Wallace on one side and the Court and the District Attorney on the other, does not seem like a discussion which would take place just prior to sentencing where the defendant has been lulled into pleading guilty by promises of a sentence of only five years and who is assured that he will receive no more than that sentence. It is an exchange which would take place where the defendant knows that he has a long criminal record and that the Judge, in reading the record, probably intends to give him a longer sentence because of it. The defendant would have no reason to attempt to justify parts of his record and to argue down other items if it had already been agreed among the public officials and the Judge that his sentence was to be five years.

(2) A review of the court records and post-conviction correspondence with petitioners supports a conclusive showing that petitioners' pleas of guilty were made voluntarily.

One would expect that the petitioners, had they made a "deal" with the Federal officials, would have made objection upon discovering that the Government's side of the deal had not been carried out. Both defendants had long criminal records and were familiar enough with judicial procedures to know that writs, motions, and appeals could be sent to the Court by prisoners.

The first communication sent to this Court by the petitioners was a letter from Romero on October 14, 1958. It was a request for "consideration of modifying these terms to run concurrently". Romero does raise the question of discussion with the Postal Inspector as to the sentence, but here he does not claim that it was a "promise" or a "deal" of any kind, but only "the ex-

pressed opinion of (the) postal inspectors". The pertinent paragraph reads as follows:

"At the time of investigation of these cases I cooperated to the fullest with Investigators to clean up these matters and it was the expressed opinion of Postal Inspectors that I would only be tried for the charge, Forgery and Passing. It was for this reason that I pleaded guilty on both counts, feeling that I would receive concurrent terms as I believe I could have shown reasonable doubt of my guilt on the burglary count before a jury."

This letter indicates that the petitioner was expecting a lesser sentence than the 10 years given him. But it is quite another thing to say that a "promise" was made to him by the Postal Inspector and that this "induced" his plea of guilty. There is a considerable difference between an official expressing an "opinion" as to what sentence a prisoner might receive and his making a "promise" that if the prisoner will plead guilty he will receive a certain sentence. The petitioners had enough court experience to know that sentencing is within the exclusive province of the Judge. Petitioner Wallace, in a letter to the Judge on April 6, 1960, admitted that he was under no misapprehension that the postal authorities had no control over the sentence: "I realize that the men who questioned us (the postal inspectors) were not the men who would give us the time, but they are the men who represent the courts and the law." The dictum of Judge Learned Hand, in United States v. Paglia, (2nd Cir., 1951) 190 F.2d 445, indicates the rule in such a case:

"If he (the defendant) chose to rely upon representations of those who had no power to commit the prosecutor, he took the same chances that anyone does who does not ascertain whether his promisor has the power to speak for another."

It should be pointed out that this letter of Romero's shortly after the trial

made no mention of any promises by anyone other than the postal inspectors, and it alleges no more than that the postal inspector gave them an "expressed opinion". Nowhere does it allege that promises were made to the petitioners to obtain their guilty pleas. It only shows that Romero had hoped, on the basis of "opinions" of postal inspectors, for more leniency from the Court and was disappointed in not receiving it.

This Court replied to Romero's letter of October 14, 1958, that he had carefully considered the circumstances and the prior record of the petitioner prior to sentencing and felt that the sentence was a just one. No further communications were received from the petitioners for a year and a half. On April 13, 1960, the Court received a letter from petitioner Wallace asking that his sentences be run concurrently.

This letter alleges that at the time the petitioners made their written confessions they believed that, on the passing and forging counts, they would receive only five years. However, this letter, as also the letter from Romero on October 14, 1958, fails to allege that they had been "promised" a deal of only five years if they pleaded guilty to these charges. Wallace states that the postal inspector let him read from the statute and that the maximum was only five years. The transcript of the September 4, 1958 arraignment shows clearly that the petitioners were not under the impression that there would be only one charge against them, because Wallace stated at that time: "We were told it would be just three counts that we would be charged with." Putting that testimony together with the statements made in this letter, written after petitioner had been in jail for a year and a half, the most favorable conclusion that can be drawn for the petitioners is that general statements were made by the postal inspector regarding his "opinion" of what sentence petitioners would receive, based solely on the forging and passing charges which were then pending, and that his "opinion" was that although there would

be separate counts, the sentence would probably not exceed five years. In fact, petitioners only received five years under the four counts for forging and passing, and it was the sending down of further felony charges from Colorado the next week which resulted in further indictments and sentences of 5 years for each of the new counts. Whether the fact that a promise made to petitioners was fulfilled remedies the involuntariness of the guilty plea need not be decided, because the evidence shows that, while the petitioners may have hoped for more leniency from the Court on the basis of the "opinion" of the postal officials, such "opinion" did not constitute an inducement or promise so as to vitiate the voluntariness of the guilty plea.

Second, this letter serves to corroborate the finding from the transcript that there is no merit to the allegation that at the subsequent hearing before the U. S. Commissioner, the Commissioner, with the concurrence of the Judge or prosecutor, promised petitioners that they would receive no more than five years. In this letter, Wallace gives a wholly different version of the hearing before the Commissioner than he now alleges in his petition. When the Commissioner left the room, the letter says, he returned and told them "that if we plead under the rule twenty that all the charges would be taken care of here in El Paso and there would be no chance of a detainer when we started our time. After this was explained to us we readily pled guilty." The letter makes no claim that anything was said to the petitioners by the commissioner that he had gotten the agreement of the judge or prosecutor that they would receive only a five year sentence.

(3) The presentence reports of Probation Officer, Chester McLaughlin, in the files of the District Court's Probation Office, provide corroborating evidence to support a conclusive showing that the allegations of the petitioners are without merit.

The presentence reports, dated September 22 (Wallace), and September 23 (Romero), indicate that all the normal presentence procedures were followed. The reports follow the usual format of a presentence report, reviewing the prisoner's background, case history, and prior criminal record.

At the end of the Wallace presentence report, under the heading "Summary and Evaluation," the Probation Officer made the following observations and recommendations to the court:

"This 35-year-old defendant has been at liberty very little since 1941. He has been sentenced to serve terms of 5 to 10 years in Kansas on two occasions, received a sentence of 1 to 4 years in Colorado, and a sentence of 10 years in Oregon. His offenses have been burglary, passing bad checks, and armed robbery. The instant offense was a deliberate professional job, in which the defendant acted with great deliberation from planning to execution. As an habitual criminal, this defendant is deserving of no leniency from the court. Probation is not recommended."

The "Summary and Evaluation" on Romero's report indicates that he deserved a lesser sentence, but nevertheless a stiff one:

"This 23-year-old male defendant served from 1948 until 1954 in the Colorado State Reformatory, for the offenses of assault and battery, burglary, criminal assault, and chronic delinquency. He was paroled at one time, but returned as a parole violator. In March 1955, he was arrested for armed robbery of a liquor store at Brighton, Colorado. For this offense and for grand larceny of the funds obtained in the robbery, he was sentenced to serve a term of 4 to 8 years in the State Penitentiary. He was paroled on December 8, 1957, stating that he owes a total of 28 months on this sentence. * * *

"Although this defendant is only 23 years of age, he has a very serious record and is involved in a very serious offense at this time. He is presently wanted as a parole violator by the State of Colorado.

"Probation is not recommended."

Considering the long and serious criminal records of both petitioners, a five-year sentence would have been unusual. The records indicate that normal procedures were followed in sentencing the petitioners to 15 and 10 years respectively.

Motion denied.